IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL TROY WATSON, d.b.a. WRAY MEDIA COMPANY, a.k.a. POLITICALLY DAMNED TALK RADIO, | ) ) ) ) | CASE NO.  1:07CV3248 |
| | ) | JUDGE NUGENT |
| Plaintiff, | ) ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| v. | ) ) | |
| BLUE CHIP BROADCASTING, LTD., d.b.a. WERE-1490 AM, *et al.*, | ) ) ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) ) | Docket # 4 |

This case is before the magistrate judge on referral.  Pending is the motion of defendants, Blue Chip Broadcasting, Ltd., d.b.a. WERE-1490 AM ("WERE"), and Radio One Communications, Inc., to dismiss the plaintiff's claims pursuant to Fed. R. Civ. P. 12(B)(6) ("R. 12(B)(6)") (Docket # 4).  Plaintiff, Michael Troy Watson ("Watson"), d.b.a. Wray Media Co., a.k.a. Politically Damned Talk Radio, opposes defendants' motion (Docket # 11).  For the reasons stated below, the magistrate judge recommends that the court grant defendants' motion in its entirety.

## I. Background

The court, as it must, takes all well-pleaded allegations in the complaint as true and construes those allegations in a light most favorable to the claimant.  Watson alleges or

does not dispute the following facts.

Watson is a student of Islam and the co-owner, with Palestinian-American Muslim Brahim Ayad, of the "Politically Damned" radio program.  On or about August 14, 2007 a representative of Blue Chip contacted Watson about the possibility of his purchasing air time on WERE.  A week later Watson met with representatives of WERE.  At this meeting, the representatives gave Watson a written proposal for purchasing broadcast time at the station, with his program to begin broadcasting on September 3, 2007.  Watson agreed with this proposal.  The following day, Watson met again with the station's representatives who told him that his program would begin on September 10, 2007.

On August 31, 2007 Watson met with several representatives of WERE.  They discussed a written contract for Watson's purchase of air time and allegedly agreed to its terms.  According to Watson, WERE agreed to air his show and stream it over the internet in return for payment of $300 weekly.  Watson in turn agreed not to threaten Jews or anyone else over the air and agreed to other conditions.  Watson also claims that he paid WERE $300 at the close of this meeting.

On September 5, 2007 Watson went to the broadcast statio with a $45 deposit for a gate pass and a key card.  While he was there he completed a promotional spot for the program that was to air on September 10, 2007.  Watson also met with Paul Guy ("Guy"), WERE's Director of Sales, and gave him a copy of the written contract with changes in the contract terms typed in by Watson.  A discussion of the contract and of Watson's religious and political views ensued.  Watson proposed that he produce a program for the sixth anniversary of the World Trade Center bombing, including live interviews with persons in the middle east.  Guy told Watson that "in order to begin on September 10, 2007, the

2

original agreement to begin on that date should be signed . . . ."  Complaint, attached to Notice of Removal (Docket #1), ¶ 22.  According to Watson, the meeting concluded with the parties again confirming the agreement.

On September 6, 2007 a sales associate at WERE telephoned Watson.  The associate told Watson that "corporate" had canceled the program and that WERE would issue him a refund check.  Watson was also told that any further discussion of the cancellation should be addressed to the station's general manager.

Watson filed an action in state court against the defendants on October 4, 2007. His complaint asserted causes of action for breach of contract, religious discrimination, a violation of his right to free speech, negligence, and estoppel.  Defendants removed the action to federal court on October 22, 2007.  Defendants now move to dismiss Watson's complaint pursuant to R. 12(b)(6) for failure to state a claim upon which relief may be granted. Watson opposes this motion and also argues that this court lacks jurisdiction over this action.

## II. Jurisdiction

Watson argues that this court is without jurisdiction to hear this action.  Watson's complaint alleges, "The actions of the Defendant[s] represented an attack/affront against Islam, a Student of Islam and/or a violation of the Constitutional Rights of Plaintiff guaranteed by the Constitution of the State of Ohio and the United States Constitution." Complaint, ¶ 34.  Title 28 U.S.C. § 1331 provides, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  As Watson asserts a claim of religious discrimination arising under the Constitution of the United States, this court has jurisdiction over that claim. Title 28 U.S.C.

3

§ 1367(a) provides in relevant part, "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." As Watson's claims all spring from defendants' alleged breach of a contract between the parties, his claims are so related as to form a single case or controversy. Thus, the court has supplemental jurisdiction over the remainder of Watson's claims.[1]

### III. Standard for motion to dismiss

In deciding a Motion to Dismiss under Rule 12(b)(6), the court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Gausmann v. City of Ashland,* 926 F. Supp. 635, 638 (N.D. Ohio 1996)(citations omitted). A well-pleaded allegation is one that alleges specific facts and does not merely rely upon conclusory statements. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988) ("more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements"), citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 at 596 (1969). The court is to dismiss a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Gausmann,* 926 F. Supp. at 638, citing *Hishon v. King & Spaulding,* 467 U.S. 69, 73 (1984). "[T]he 'complaint . . . must contain either direct or inferential allegations respecting all the material elements to sustain a recovery

---

[1]    Watson moved the court for leave to amend his complaint to cure any jurisdictional difficulties. The court granted Watson 10 days to amend. Watson did not file an amended complaint.

under some viable legal theory.'" *Savage v. Hatcher*, 109 Fed. Appx. 759, 761, 2004 WL

2030310, at **2 (6th Cir. Sept. 7, 2004) (quoting *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d

389, 406 (6th Cir.1998) (internal quotation marks and citation omitted by the quoting

court)).

     While the complaint must give the defendant fair notice of the plaintiff's claim and

the grounds upon which it rests, it need not set down in detail all the particularities of the

claim. *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994); *Allard v. Weitzman*

*(In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir. 1993).  Under this standard,

> [a] plaintiff will not be thrown out of court for failing to plead facts in support of every
> arcane element of his claim.  But when a complaint omits facts that, if they existed,
> would clearly dominate the case, it seems fair to assume that those facts do not
> exist.

*Scheid,* 859 F.2d at 436 (quoting *O'Brien v. DiGrazia,* 544 F.2d 543, 546 n.3 (1st Cir.

1976), *cert. denied,*  431 U.S. 914 (1977)).

### III.  Breach of contract

     Defendants move for dismissal of Watson's cause of action for breach of contract,

arguing that Watson fails to allege an enforceable contract between the parties.  Watson

replies that the existence of a contract is an issue of fact for trial.[2]

     Ohio law requires three elements before a court may find that a contract has been

formed:  (1) both parties consent to the terms of the contract; (2) there is a meeting of the

minds as to the essential terms of the contract; and (3) those terms are sufficiently definite

---

     [2] Watson also argues that defendants' representative could not have notified him
that his contract was cancelled if no contract existed.  The complaint alleges that
defendants' representative told Watson that his *program* had been *cancelled,* not that a
contract had been cancelled.

5

and certain to allow a court to enforce them.  *See Rulli v. Fan Co.*, 79 Ohio St. 3d 374, 376, 683 N.E.2d 337, 339 (1997);  *Episcopal Retirement Homes, Inc. v. Ohio Dep't of Indus. Relations*, 61 Ohio St. 3d 366, 369, 575 N.E.2d 134, 137 (1991); *Zelina v. Hillyer*, 165 Ohio App. 3d 255, 258-59, 846 N.E.2d 68, 71 (2005).  The meeting of minds as to the essential terms of the contract must be such that "a reasonable person would find that the parties manifested a present intention to be bound to an agreement."  *Zelina*, 165 Ohio App. 3d at 259, 846 N.E.2d at 70 (quoting *Telxon Corp. v. Smart Media of Delaware, Inc.,* 2005 WL 2292800, at *3 (Ohio App. 2005).  The meeting of minds must include "a definite offer on one side and an acceptance on the other."  *Garrsion v. Daytonian Hotel*, 105 Ohio App. 3d 322, 325, 663 N.E.2d 1316, 1317 (1995) (citations omitted).

Watson's complaint alleges facts which preclude relief in contract under any set of facts consistent with those allegations.  Watson alleges that he was told that to begin broadcasting on September 10, 2007, the written contract had to be signed.  No representative of either defendant signed the contract.  *See* WERE-AM Customized Programming Contract, Complaint, Exh. A, p. 5.  This obviates any assertion that defendants consented to the terms of an alleged oral contract or that defendants manifested a present intention to be bound to an alleged oral agreement.  As no relief may be granted on Watson's contract claim on any set of facts consistent with his allegations, the magistrate judge recommends that the court grant defendants' motion as regards Watson's cause of action alleging breach of contract.

6

IV. Discrimination on the basis of religion

Watson alleges that "[t]he actions of the Defendant[s] represented an attack/affront against Islam, a Student of Islam and/or a violation of the Constitutional Rights of Plaintiff guaranteed by the Constitution of the State of Ohio and the United States Constitution." Complaint, ¶34.  This is the only reference to religious discrimination in the body of the complaint.  Defendants move to dismiss this cause of action because Watson offers only conclusory allegations in support of his claim and fails to cite any law authorizing his cause of action.  Watson offers no rebuttal to defendants' arguments.

Watson not only fails to offer direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory but also fails to cite a viable legal theory pursuant to which he brings his claim.  Instead, he offers the bare conclusion that he was discriminated against on the basis of religion.  Mere conclusory allegations of religious discrimination are not enough to state a claim; plaintiff must provide some basis for the claim.  *Drinkard v. Drinkard*, 904 F.2d 706 (6th Cir. 1990) (citing *Chapman v. City of Detroit,* 808 F.2d 459, 465 (6th Cir. 1986)).  As Watson has failed to provide any basis for his claim, the magistrate judge recommends that the court grant defendants' motion as regards Watson's cause of action alleging religious discrimination.

V. Violation of the right to free speech

Watson alleges that "the actions of the Defendants intended to silence a voice of alternative view and/or by violation of the freedom of speech rights of the Plaintiff." Complaint, ¶ 35.  This is the only reference to a violation of Watson's right to freedom of speech in the body of the complaint.  Defendants move to dismiss this cause of action because Watson does not have a right to freedom of speech with respect to actions of the

7

defendants.  Watson offers no rebuttal to defendants' arguments.

As defendants point out there is no common law right free speech, and the Ohio Constitution's protections for speech are co-extensive with the United States Constitution's protections for speech.  *Walje v. City of Winchester*, 772 F.2d 729, 731 (6th Cir. 1985); *Eastwood Mall, Inc v. Slanco*, 68 Ohio St. 3d 221, 223, 626 N.E.2d 59, 61 (1994).  Thus, Watson's right to speak freely is protected only to the extent that the First Amendment to the United States Constitution affords him such protection.

"It is undisputed that First and Fourteenth Amendment protections . . . are triggered only in the presence of state action and that a private entity acting on its own cannot deprive a citizen of First Amendment rights.  *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000) (citing as examples *Flagg Brothers Inc. v. Brooks*, 436 U.S. 149, 156 (1978) ("most rights secured by the Constitution are protected only against infringement by governments"); and *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976) ("It is, of course, a commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state.")).  As Watson fails to show how government action is implicated in the alleged abridgment of his first amendment rights, the magistrate judge recommends that the court grant defendants' motion as regards Watson's cause of action alleging a violation of his right to free speech.

### VI.  Negligence

Watson alleges that the "the actions of Defendant[s] were negligent."  Complaint, ¶ 37.  He makes no other reference to this cause of action in the body of the complaint. Defendants move to dismiss this cause of action for failure to state a claim for negligence. Watson offers no rebuttal to defendants' arguments.

8

To establish negligence under Ohio law, a plaintiff must show "the existence of a duty, a breach of the duty, and an injury proximately resulting therefrom." *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St. 3d 677, 680, 693 N.E.2d 271, 274 (1998). The existence of a duty "depends on the foreseeability of the injury." *Menifee v. Ohio Welding Prods.*, 15 Ohio St. 3d 75, 77, 472 N.E.2d 707, 710 (1984). An injury is foreseeable if "a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *Id.*

Watson fails to make direct or inferential allegations respecting any of the material elements necessary to sustain a recovery. He does not directly allege that defendants owed him a duty of care, that they breached their duty, or that his alleged injury arose from such a breach, nor does he inferentially allege the existence of a duty of care by alleging that his injury was foreseeable. As Watson fails to plead the allegations necessary to state a claim for negligence, the magistrate judge recommends that the court grant defendants' motion as regards Watson's cause of action for negligence.

### VII. Estoppel

Watson alleges that "the actions of the Defendants are prohibited by the Doctrine of Estoppel and/or that the Plaintiff relied upon the representations of the Defendants to his detriment." Complaint, ¶ 39. He makes no other reference to this cause of action in the body of the complaint. Defendants move to dismiss this cause of action for failure to state a claim for estoppel. Watson offers no rebuttal to defendants' arguments.

Ohio allows a plaintiff to plead promissory estoppel in equity "as a separate cause of action based upon a promise which has induced reliance." *McCarthy, Lebit, Crystal, &*

9

*Haiman Co., L.P.A. v. First Union Management, Inc.*, 87 Ohio App. 3d 613, 624, 622 N.E.2d 1093, 1100 (1993).  Ohio has adopted the doctrine of promissory estoppel as it is stated in the *Restatement of the Law 2d, Contracts* (1973), § 90: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *McCroskey v. State*, 8 Ohio St. 3d 29, 30, 456 N.E.2d 1204, 1205 (1983).

The allegations in Watson's complaint preclude estopping defendants from denying the alleged oral promise to broadcast his programming under any set of facts consistent with those allegations.  As has already been noted, Watson alleges that he was told that to begin broadcasting on September 10, 2007 the written contract had to be signed.  He concedes that no representative of either defendant signed the contract.  This prevents Watson from asserting that his reliance in the absence of a signed contract on defendants' alleged oral promise that they would broadcast his program was reasonable.  As Watson cannot argue that his reliance on defendants' alleged promise was reasonable, no relief may be granted to Watson pursuant to the doctrine of estoppel.  For this reason the magistrate judge recommends that the court grant defendants' motion as regards Watson's cause of action based on the doctrine of estoppel.

10

VIII.  Conclusion

For the reasons given above the magistrate judge recommends that the court grant

defendants' motion to dismiss in its entirety and dismiss Watson's complaint with prejudice.

The case management conference scheduled for January 21, 2008 at 9:30 a.m. is

CANCELLED.


Date:  January 9, 2009            /s/Patricia A. Hemann
                                  Patricia A. Hemann
                                  United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).